UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHI AVIATION, LLC<br><br>Plaintiff,<br><br>-vs-<br><br>NEW YORK HELICOPTER CHARTER INC.,<br><br>Defendant. | CIVIL ACTION NO. 1:25-cv-00617-ALC<br><br>ANSWER AND COUNTERCLAIM |

Defendant New York Helicopter Charter Inc. ("NYHC" or Defendant"), by and through its attorneys, Lentz & Gengaro LLP, hereby submits this Answer and Counterclaim to the Complaint of Plaintiff PHI Aviation, LLC ("PHI") dated January 21, 2025 (the "Complaint"), and responds, alleges and avers as follows on knowledge as to its own acts and otherwise on information and belief, as follows:

## ANSWER

## PARTIES[1]

1. Lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 1.

2. Admits that NYHC is a New York Corporation but denies that its principal place of business is in New York.

## JURISDICTION AND VENUE

3. Admits the allegations of paragraph 3.

4. Admits the allegations of paragraph 4.

---

[1] The section headings are used in the Complaint are repeated in this Answer solely as a matter of convenience and do not constitute an admission.

**FACTUAL ALLEGATIONS**

5. Lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 5.

6. Admits that the parties entered into a Helicopter Lease, as defined in the Complaint but refers to the Helicopter Lease for its terms and conditions.

7. Neither admits nor denies the allegations of paragraph 7 but refers to the Helicopter Lease for its terms and conditions.

8. Admits only that PHI asserted that NYHC was in default of the Helicopter Lease but otherwise denies the allegations of paragraph 8.

9. Admits that NYHC disputed PHI's calculation of the amount due and otherwise refers to the reference document for its terms and conditions.

10. Admits that NYHC sent a payment to PHI, denies that the payment was overdue, but lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 10.

11. Admits that NYHC advised PHI that it was dropping off the Helicopter because PHI failed to deliver the Helicopter in conformance with the terms of the Helicopter Lease.

12. Admits that PHI made an additional demand for payment and for NYHC to return the Helicopter to PHI's facility in Lafayette, Louisiana but otherwise denies the allegations of paragraph 12.

13. Denies that NYHC failed to pay amounts that are properly due under the Helicopter Lease.

14. Admits that NYHC returned the Helicopter to PHI and that PHI retrieved the Helicopter but otherwise denies the allegations of paragraph 14.

15. Admits that PHI terminated the Helicopter Lease but otherwise refers to the referenced document for its terms and conditions.

16. Admits that PHI demanded payment of amounts that it alleged were due under the Helicopter Lease but denies that any amounts were due as a result of PHI's breach of the Helicopter Lease.

## CAUSE OF ACTION/RELIEF REQUESTED

### COUNT I. Breach of Contract (Helicopter Lease)

17. Defendant repeats and realleges each and every response in this Answer as if fully set forth herein.

18. Neither admits nor denies the allegations of paragraph 18 but refers to the Helicopter Lease for its terms and conditions.

19. Neither admits nor denies the allegations of paragraph 19 but refers to the Helicopter Lease for its terms and conditions.

20. Denies the allegations of paragraph 20.

21. Admits that PHI has submitted invoices but denies that NYHC owes PHI any payments.

22. Denies the allegations of paragraph 22.

23. Denies the allegations of paragraph 23.

24. Denies the allegations of paragraph 24.

25. Denies the allegations of paragraph 25.

26. Denies the allegations of paragraph 26.

## PRAYER FOR RELIEF

27. The "WHEREFORE" paragraph (including subparagraphs A-C) which immediately follows paragraph 26 states various demands for relief to which no response is required but, should a response be required, Defendant denies that PHI is entitled to any relief whatsoever.

28. Defendant denies any other allegations in the Complaint that are not specifically admitted or denied herein.

## AFFIRMATIVE DEFENSES

29. Defendant asserts the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest on Plaintiff.

## FIRST AFFIRMATIVE DEFENSE

30. PHI fails to alleged facts sufficient to support judgment or a finding of liability against Defendant and, therefore, PHI's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

31. PHI's claims are barred by the terms of the Lease.

## THIRD AFFIRMATIVE DEFENSE

32. PHI's claims are barred, in whole or in part, by the doctrine of assumption of risk.

## FOURTH AFFIRMATIVE DEFENSE

33. PHI's claims are barred, in whole or in part, by the doctrine of waiver, estoppel, and/or laches based on PHI's own conduct.

**FIFTH AFFIRMATIVE DEFENSE**

34. To the extent PHI has suffered any damages for which the law would provide a remedy, which Defendant denies, PHI's damages must be reduced as a result of PHI's failure to mitigate its damages.

**SIXTH AFFIRMATIVE DEFENSE**

35. To the extent PHI has suffered any damages for which the law would provide a remedy, which Defendant denies, PHI is not entitled to an award of consequential damages or attorneys' fees.

**SEVENTH AFFIRMATIVE DEFENSE**

36. To the extent PHI's damages, if any, were caused or exacerbated by any act, or failure to act, on the part of PHI, any damages awarded to PHI should be reduced accordingly.

**EIGHTH AFFIRMATIVE DEFENSE**

37. To the extent PHI has suffered any damages for which the law would provide a remedy, which Defendant denies, any such damage resulted from the acts or omissions of person or entities other than Defendant.

**NINTH AFFIRMATIVE DEFENSE**

38. The Claims set forth in the Complaint, in whole or in part, are barred by the doctrine of unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

39. PHI's claims fails to state a cause of action because Defendant has fulfilled all of its duties and obligations under the Lease.

### ELEVENTH AFFIRMATIVE DEFENSE

40. Plaintiff cannot recover damages because there was a lack of consideration for the Helicopter Lease.

### PRAYER FOR RELIEF

41. Defendant NYHC respectfully requests that the Court dismiss the Complaint with prejudice, award Defendant attorneys' fees and costs, and such other and further relief as the Court deems equitable and just.

### COUNTERCLAIM

42. Defendant/Counterclaim Plaintiff New York Helicopter Charter Inc. ("NYHC"), repeats, realleges and incorporates each of the allegations, averments, responses, denials and affirmative defenses set forth in paragraph 1 through 41 of the Answer to the Complaint as if fully set forth herein and further alleges against Plaintiff/Counterclaim Defendant PHI Aviation, LLC ("PHI") on knowledge as to its own acts and otherwise on information and belief, as follows:

### PARTIES

43. NYHC is a New York Corporation with its principal place of business in Kearny, New Jersey.

44. PHI is a Louisiana limited liability company with its principal place of business in Lafayette, Louisianna.

## JURISDICTION AND VENUE

45.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(c) because: (a) NYHC and PHI are citizens of different state; and (b) there more than $75,000 in controversy between the parties.

46.     Venue is proper in the Southern District of New York (City and the Borough of Manhattan) pursuant to 28 U.S.C. §§1391(b)(1) and (2) pursuant to §17.12(a) of a Helicopter Lease Agreement between PHI and NYHC (the "Helicopter Lease"), a copy of which is attached to PHI's Complaint as Exhibit A.

## FACTUAL BACKGROUND

47.     On April 17, 2024, NYHC and PHI entered into the Helicopter Lease pursuant to which NYHC agreed to lease from PHI one "Bell 407 Helicopter with manufacturer Serial No. 53114 and US Registration Mark N407MR" (the "Helicopter").

48.     NYHC took possession of the Helicopter in or about June 2024.

49.     Before NYHC picked up the Helicopter in Lafayette, Louisiana, PHI's director of maintenance as well as each mechanic who worked on the Helicopter verified that the Helicopter was airworthy.

50.     PHI cannot deliver a helicopter that is not airworthy.

51.     Based on PHI's verification of the airworthiness of the Helicopter, NYHC's sole shareholder, Michael Roth, executed the Certificate of Acceptance digitally by DocuSign.

52.     When NYHC's personnel arrived in Lafayette, Louisiana to pick up the Helicopter, PHI's employee took them on a test flight flown by PHI.

53. NYHC noticed numerous problems with the Helicopter that made it not airworthy.

54. As a result, NYHC waited approximately five days while PHI supposedly repaired the Helicopter, and once again certified its airworthiness.

55. NYHC then began the flight from Lafayette, Louisianna to Kearny, New Jersey.

56. The Helicopter began experiencing additional problems in the Carolinas. NYHC was forced to land the Helicopter and wait several additional days while PHI sent mechanics and parts to repair the Helicopter.

57. After conducting the repairs, PHI again certified to the airworthiness of the Helicopter.

58. NYHC then flew the Helicopter to Kearny, New Jersey.

59. NYHC had the Helicopter inspected by the Flight Safety Standard's Office of the Federal Aviation Administration (the "FAA") in order to have it added to NYHC's Part 135 Certificate so that it could be used in NYHC's operations.

60. The FAA's inspection revealed that the main rotor pitch links were worn out below allowable tolerances. The failure of one of these pitch links can cause the Helicopter to become uncontrollable in flights.

61. As a result, NYHC was unable to fly the Helicopter and utilize it in its operations. NYHC repaired the main rotor pitch links at a cost of approximately $10,000.00.

62. NYHC requested reimbursement from PHI which PHI refused.

63. During additional testing, NYHC became aware of the following additional problems which made the Helicopter unsafe to fly:

8

1. TR Pitch Link worn beyond allowable limits;
2. Main rotor lower rod end on pitch links worn beyond allowable limits;
3. Negative safety wire on fuel nozzle;
4. NP Sensor Faulty;
5. Ignitor safety wire was nonexistent;
6. Leaking fuel sump seal and boost pump housing seal (replaced seals);
7. Lor Roto Horn RPM sensor faulty;
8. Loose firewall dust shield hardware;
9. ECU on board maintenance terminal INOP;
10. Compass was required to be changed due to low fluid;
11. Torque indicator backlight very dim;
12. Tail rotor span weight hardware not safetied or prosealed;
13. Tail rotor blade bolt not torqued to spec;
14. Engine grounding strap loose;
15. Engine deck drain lines clogged;
16. Cyclic centering switch improperly rigged;
17. Swashplate friction below minimums less than 100 hrs. from last inspection;
18. Intercom issue (unable to isolate passengers, only copilot);
19. Directional gyro shows 90 degrees off from heading;
20. Altitude Encoder 70 feet off from altimeter;
21. Altimeter is 40 feet off from allowable limit of 20 feet; and
22. Cyclic lateral boost bell crank has axial play (P/N 407-001-521-101).

64. Based on these problems, NYHC could not fly the Helicopter or use it in its flight operations because of the substantial risk to its pilots and passengers.

65. NYHC, therefore, notified PHI that it was cancelling the Lease and that PHI should pick up the Helicopter at NYHC's premises.

## COUNT I
### (Misrepresentations)

66. Defendant/Counterclaim Plaintiff repeats and realleges each and every allegation of this Counterclaim as if fully set forth herein.

67. PHI represented to NYHC that the Helicopter was airworthy and safe to fly.

9

68. In reasonable reliance on PHI's representations and the verification of its director of maintenance and all mechanics who worked on the Helicopter, NYHC accepted the Helicopter.

69. PHI's representations concerning the airworthiness of the Helicopter were false when made.

70. As a result of PHI's misrepresentations, NYHC had suffered damages.

71. The Helicopter Lease requires NYHC to utilize the Helicopter in minimum of 500 hours per year.

72. NYHC receives $2,500.00 per hour for the use of its Helicopters.

73. The Helicopter Lease was for three years.

74. Accordingly, NYHC's lost revenue in the total amount of $3,750,000.00.

75. NYHC's profit margin is 75%.

76. Thus, PHI's misrepresentations have proximately cost damages in the amount of $2,812,500.00.

## COUNT II
### (Breach of Covenant of Good Faith and Fair Dealing)

77. Defendant/Counterclaim Plaintiff repeats and realleges each and every allegation of this Counterclaim as if fully set forth herein.

78. There is an implied covenant of good faith and fair dealing in every contract.

79. PHI's failure to deliver NYHC a Helicopter that could be used in its operations which was not airworthy, and which was completely unsafe to fly, constitutes a breach of the covenant of good faith and fair dealing.

80. As a result of PHI's breach, NYHC has suffered substantial damages as alleged in the First Count of this Counterclaim.

## COUNT III
## (Fraudulent Inducement)

81. Defendant/Counterclaim Plaintiff repeats and realleges each and every allegation of this Counterclaim as if fully set forth herein

82. PHI's misrepresentations of fact concerning the airworthiness and safety of the Helicopter caused NYHC to execute the Helicopter Lease and the Certificate of Acceptance.

83. But for PHI's representations, NYHC would not have entered in the Helicopter Lease or execute the Certificate of Acceptance.

84. NYHC, therefore, was fraudulently induced to enter into the Helicopter Lease and execute the Certificate of Acceptance.

85. As a result of PHI's fraudulent inducement, NYHC has suffered damages as set forth in the First Count.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant/Counterclaim Defendant New York Helicopter Charter Inc. respectfully requests that this Court enter judgment against Plaintiff/Counterclaim Defendant PHI Aviation, LLC, as follows:

a) For actual, compensatory and consequential damages in the minimum amount of $2,812,500.00 together with punitive damages, interest, attorneys' fees, costs of suit; and

    b) For such other and further relief as the Court deems just and just.

Dated: West Orange, New Jersey

April 21, 2025

                                      LENTZ & GENGARO LLP
                                      Attorneys for Defendant

                                      By: /s/ *Laurence Sass*
                                          Lawrence Sass, Of Counsel on
                                          this matter.

                                      347 Mt. Pleasant Avenue, Suite 203
                                      West Orange, New Jersey 07052
                                      (973) 669-8900
                                      larry.sass@sasslawoffice.com
                                      cpg@lentzgengaro.com